HEIST, Administrator, Respondent, vs. WISCONSIN-MINNESOTA LIGHT & POWER COMPANY, Appellant.

*September 21—October 19, 1920.*

*Workmen's compensation: Relation of master and servant: Action for death.*

Where the electric lights of a village failed, and the superintendent of the company furnishing power instructed his wife by telephone to have some one repair the trouble and suggested she procure one L., a former employee of the company, it is *held* that the direction to procure L. was advisory only, and one H., whom the wife engaged, became an employee of the company and under the workmen's compensation act, so that his administrator could not recover in an action at law for death which occurred while he was engaged in repairing a broken transmission wire.

APPEAL from a judgment of the circuit court for St. Croix county: GEORGE THOMPSON, Circuit Judge. *Reversed.*

This action was brought by the administrator of Erwin Heist, deceased, to recover damages, for the benefit of his father and mother, resulting from his death, which was occasioned by his coming in contact with one of the electric wires of defendant's power line. Upon the verdict of the jury judgment was rendered in favor of plaintiff, from which the defendant brings this appeal.

*G. O. Linderman* of Eau Claire and *Spencer Haven* of Hudson, for the appellant.

For the respondent the cause was submitted on the brief of *Geo. A. Lewis* of Minneapolis, attorney, and *C. J. Strang* of Grantsburg, of counsel.

OWEN, J.   The pivotal question is whether the deceased at the time of his death was an employee of the defendant company.   The defendant is a power company with its principal plant for the generation of electric power located at the city of Glenwood.   It furnished power for electric lights in the village of Boyceville.   On the evening of August 23, 1918, the electric lights in the village of Boyceville were out.   It was discovered that the wire carrying the current from Glenwood to Boyceville was broken.   One Hill was the superintendent of the company and had general management of its affairs at Glenwood.   On the evening in question he was at Stillwater.   During a telephone conversation with his wife, at about 8 o'clock she advised him that there was trouble with the lights at Boyceville.   He asked her if she could get hold of Norman Larson, who had been a former employee of the company, to go down.   She said that he was out threshing.   He asked her what had been done and she said they took out the fuse and transformer. She did not know at that time that the line was down.   He wanted her to get Larson or somebody to get that line fixed, the fuse and transformer, so that they would have lights at Boyceville.   He testified:

"When I called her up she said something about there having been trouble on the Boyceville line, and that was when I spoke about Norman Larson, and she said that the transformer had already been fixed by Mr. Northrup, she thought, and I told her I would call her in an hour or so and find out if it had been fixed.   I didn't tell her to do anything in the meantime.   If other trouble would develop on the line I wanted my wife to get Norman Larson to fix it if he could, and if she couldn't get Norman Larson to get someone else to fix it right away."

Shortly after this conversation it was discovered that the wire was broken.   Mrs. Hill was advised and she called up the plaintiff, who is the father of deceased and who had formerly been superintendent of the plant.   She asked plaintiff if he could go out and fix the wire.   He told her that he could not, but asked where Norman Larson was.

Just at that time Norman Larson came into the store where plaintiff was, and he then said to Mrs. Hill, "Here is Norman Larson now, let him go." Then he glanced over his shoulder and saw Erwin, the deceased, and said, "Erwin is here, let Erwin go." After that talk with Mrs. Hill plaintiff requested Erwin to go out and fix the wire. Erwin, the deceased, and Norman Larson, together, went to fix the wire. Upon arriving at the place where the wire was broken, deceased took hold of one of the broken ends and was immediately killed.

If the deceased was an employee of the company this action cannot be maintained, because the defendant was under the workmen's compensation act and its liability in the premises was referable to the provisions of that act. The act (sec. 2394—8, Stats.) as it existed at the time of the accident provided that any employee shall be deemed to have accepted and shall be subject to the provisions of the act if at the time of the accident upon which liability is claimed the employer charged with such liability is subject to the provisions of the act and the employee shall not have given to his employer notice in writing that he elects not to be subject to its provisions.

The learned circuit judge held that the deceased was not an employee of the company, because Hill's instructions to his wife were to get Norman Larson to fix it if she could get him, and that if she could not get Larson then to get someone else, and that, as Larson was available, Mrs. Hill had no authority to employ the deceased. We regard this as too literal and narrow a construction of the authority which Mr. Hill vested in his wife. It is plain to us that the authority conferred upon her by the telephone conversation above set forth was to get someone to repair the trouble. His reference to Norman Larson was advisory merely and a suggestion which was intended to be helpful to his wife in the performance of a duty with which she was not very familiar. We have no doubt that the circumstances under which the deceased went to repair the wire constituted

him an employee of the company and that the liability of the company is measured by the terms of the workmen's compensation act. It follows that this action cannot be maintained.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the plaintiff's complaint.